1
2
3
4
5
6
7

8    **UNITED STATES DISTRICT COURT**

9    **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| HUGO CERNAS,                              ) | Case No.: 1:10-cv-02126-AWI-JLT (HC) |
| 　　　　　Petitioner,                        ) | FINDING AND RECOMMENDATION TO DENY |
| 　　v.                                      ) | PETITION FOR WRIT OF HABEAS CORPUS |
| ANTHONY HEDGPETH,                          ) | (Doc. 1) |
| 　　　　　Respondent.                        ) | ORDER DIRECTING THAT OBJECTIONS BE |
| | FILED WITHIN TWENTY-ONE DAYS |

17    Petitioner Hugo Cernas ("Petitioner") is a state prisoner proceeding *in propria persona* with a

18    petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

19    **PROCEDURAL HISTORY**

20    Petitioner is in the custody of the California Department of Corrections ("CDCR").  On March

21    8, 2005, a jury in the State of California Superior Court, County of Fresno, convicted Plaintiff of the

22    following: (1) one count of willful, deliberate, and premeditated murder (Cal. Penal Code § 187(a));

23    (2) two counts of attempted murder (Cal. Penal Code § 665/187); and (3) one court of street terrorism

24    (Cal. Penal Code § 186.22(a)). (Doc. 16, p. 9).  The Superior Court sentenced Plaintiff to "life without

25    the possibility of parole, plus an additional and consecutive 25 years-to-life term…[and] [] two life

26    terms with the possibility of parole on the attempted murder counts, plus an additional and consecutive

27    10 year term…on each count." Id.  The Court stayed sentencing on Plaintiff's street terrorism

28    conviction. Id.

1

On January 16, 2007, Petitioner filed a direct appeal to the California Court of Appeals, Fifth Appellate District (the "5th DCA"). (Doc. 16, p. 10).  The appellate court vacated Petitioner's life sentence without possibility of parole and remanded for resentencing on the first degree murder count on December 28, 2006.  (Id. at p. 9). Shortly thereafter, both the State of California and Petitioner appealed the 5th DCA's decision to the California Supreme Court in May of 2007. (Doc. 16, p. 10). After a series of remands and subsequent appeals, on March 27, 2009, the trial court resentenced Petitioner to his original term, except that the trial court stayed the 25-years-to-life sentence. (Doc. 16, p. 11).  Petitioner subsequently filed multiple petitions for writs of habeas corpus which resulted in the exhaustion of his claims for relief. (Doc. 16, p. 11).

Petitioner initiated the instant petition on November 15, 2010, at which time he requested that the Court stay proceedings until resolution of his "Brady violation" claim in the state court. (Docs. 1 & 3).  On December 14, 2010, the Court denied Plaintiff's motion to stay proceedings as moot because Petitioner's exhaustion requirement was completed on December 1, 2010, when the California Supreme Court denied his "Brady violation" petition.  (Doc. 8).  Respondent filed his answer on February 11, 2011. (Doc. 16).  On April 4, 2011, Petitioner submitted his Traverse to the Court.  (Doc. 20).  Respondent concedes that Petitioner has exhausted all five claims for relief. (Doc. 16, p. 12).

## FACTUAL BACKGROUND

The Court adopts the following Statement of Facts as contained in the 5th DCA's published decision in People v. Ybarra:

> "On October 5, 2001, shortly after 7:00 p.m., someone in a BMW yelled out to Ybarra, "What's up Sur?" Ybarra yelled back, "Bulldog." From inside the BMW, someone fired several shots at him from a handgun at point blank range but missed him. Sur is short for Sureños, a rival criminal street gang.
>
> Shortly after 9:30 that evening, Ybarra, Cernas, and another male, all armed with guns, stepped out of a large car "between a gray and a blue" in color, walked toward a house that was "a perceived Sureño location" where Gilbert Medrano, his pregnant niece Mercedes López, and his friend Álvaro Romero were sitting outside talking, and opened fire. Ybarra's father owns a sky blue Lincoln Town Car.
>
> Bullets struck Medrano in the face, López in the leg and stomach, and Romero twice in the back and once in the hip. Medrano survived with a bullet lodged between his cervical vertebrae. López, who had a Caesarian section and a hysterectomy, and her daughter, who was born a month prematurely with a scratch mark from a bullet on her back, both survived. Romero died at the scene. A gang expert characterized both shootings as gang warfare between Bulldogs and Sureños."

2

People v. Ybarra, 149 Cal. App. 4th 1175, 57 Cal. Rptr. 3d 732, 736 (2007) *review granted and opinion superseded*, 166 P.3d 2 (Cal. 2007)(Lodged Document ("LD") 4)**.**

## DISCUSSION

### I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### II.   Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of the petitioner's claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams v. Taylor, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts

3

1    that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."

2    Brown v. Payton, 544 U.S. 133, 141 (2005), *citing* Williams v. Taylor, 529 U.S. 326, 405-406 (2000).

3    A state court decision involves an "unreasonable application" of clearly established federal law "if the

4    state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable

5    manner." Id., *quoting* Williams, 529 U.S. at 409-410; Woodford v. Visciotti, 537 U.S. 19, 24-25

6    (2002)(*per curiam*).

7        Consequently, a federal court may not grant habeas relief simply because the state court's

8    decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable.

9    Wiggins v. Smith, 539 U.S. 510, 511 (2003) (*citing* Williams v. Taylor, 529 U.S. at 409). In

10   Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an

11   "unreasonable application" of federal law is an objective test that turns on "whether it is possible that

12   fairminded jurists could disagree" that the state court decision meets the standards set forth in the

13   AEDPA. If fairminded jurists could so disagree, habeas relief is precluded. Richter, 131 S.Ct. at 786.

14       As the Supreme Court of the United States has noted, AEDPA's standard of "contrary to, or

15   involv[ing] an unreasonable application of, clearly established Federal law" is "difficult to meet,"

16   because the purpose of AEDPA is to ensure that federal habeas relief functions as a "'guard against

17   extreme malfunctions in the state criminal justice systems,'" and not as a means of error correction.

18   Richter, 131 S.Ct. at 786, (*quoting* Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J.,

19   concurring in judgment)). The Supreme Court has "said time and again that 'an *unreasonable*

20   application of federal law is different from an *incorrect* application of federal law.'" Cullen v.

21   Pinholster, 131 S.Ct. 1388, 1410-11 (2011). Thus, a state prisoner seeking a writ of habeas corpus from

22   a federal court "must show that the state court's ruling on the claim being presented in federal court was

23   so lacking in justification that there was an error well understood and comprehended in existing law

24   beyond any possibility of fairminded disagreement." Richter, 131 S.Ct. at 787-788.

25       Moreover, federal "review under § 2254(d)(1) is limited to the record that was before the state

26   court that adjudicated the claim on the merits." Cullen, 131 S.Ct. at 1398 ("This backward-looking

27   language requires an examination of the state-court decision at the time it was made. It follows that the

28   record under review is limited to the record in existence at the same time–i.e., the record before the

4

state court.")

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637 (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment"). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

The AEDPA also requires considerable deference be given to a state court's factual findings. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. at 340. Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-077 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). Where the state court denied the petitioner's claims on procedural

grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's claims de novo. Pirtle, 313 F.3d at 1167.

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002); Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

### III.   Review of Petitioner's Claims.

Plaintiff alleges the following as grounds for relief in his instant petitioner: (1) ineffective assistance of counsel; (2) the trial court erroneously admitted the state's gang expert to testify in violation of his right to confrontation and a fair trial; (3) outside influence on the jury violated his right to a fair trial; (4) the trial court violated Plaintiff's right to a fair trial when by refusing to permit Plaintiff to impeach a witness with a prior welfare fraud conviction; and (5) the state failed to disclose "Brady evidence" in violation of his due process rights. (Doc. 1, pp. 26 – 42).  As discussed below, the Court rejects all of Petitioner's claims and recommends that the petition be denied with prejudice.

### A.   Ineffective Assistance of Counsel.

Petitioner first contends that his trial counsel was ineffective for failing to call an alibi witness to testify at trial.  This contention is without merit.

### 1.   The Fresno County Superior Court's Adjudication[1]

The Fresno County Superior Court rejected Petitioner's claim of ineffective

---

[1] Because Petitioner exhausted claims one, two, and five in a collateral proceeding rather than on direct appeal, and because the 5th DCA and the California Supreme Court summarily denied these claims in Petitioner's state habeas petition, the last reasoned decision as to these three claims was that of the Superior Court in its order denying the habeas petition.

assistance of counsel as follows:

> [W]hile petitioner claims that his counsel was ineffective for failing to call his uncle Ramon Preciado as an alibi witness to corroborate his story about stealing a truck on the night of the murder, petitioner has failed to show that his counsel's decision not to call Preciado was unreasonable or caused him any actual prejudice. In order to show ineffective assistance of counsel, petitioner must allege facts showing that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) that his defense suffered prejudice as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 690-692.)
>
> Petitioner has submitted a declaration from Preciado in which he states that he bought a truck bed cover from petitioner on October 6, 2001, the day after the murder.  (Preciado decl.) However, Preciado's declaration does not establish that petitioner stole the truck bed cover, that the theft occurred on the night of October 5, 2001, or that petitioner could not have stolen the bed cover and also committed the murder. At most, Preciado's testimony would have shown that petitioner had a truck bed cover for sale the day after the murder. Thus, petitioner has failed to show that his counsel acted objectively unreasonably in failing to call Preciado as a witness, or that his failure to call Preciado caused any actual prejudice to his defense.

(LD 18, pp. 2-3.)

### 2. Federal Standard for Ineffective Assistance of Counsel.

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to Strickland 's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); *see also* Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of appellate counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that appellate counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052 (1984). Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694.  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the appeal. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. 1411, 1419 (2009).  Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 129 S.Ct. at 1420.  In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003).  Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. *See* Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

3. Analysis.

Initially, the Court notes that the California Superior Court of Fresno County expressly applied Strickland – the correct federal standard – to Petitioner's contentions regarding his counsel's performance.  Hence, the only question is whether, having applied the correct test, the state court's application of Strickland was objectively unreasonable. Schriro v. Landrigan, 550 U.S. at 473. The Court concludes that it was not.

In his petition, Petitioner argues that his trial counsel, attorney Idiart ("Idiart"), was ineffective when: (1) Idiart failed to reasonably conduct a pretrial investigation concerning his alibi on the night of the murder and (2) Idiart declined to call Ramon Preciado ("Preciado") as an alibi witness during the trial. (Doc. 1, p. 26-27).  Specifically, Preciado's testimony "could have corroborated Petitioner's testimony about stealing a [S]ilverado truck the night [of the murder]." (Doc. 1, p. 27).  Petitioner indicates that Idiart later refused to provide photographs of the stolen truck to his private investigator, claiming that the photographs were lost or damaged. (Doc. 1, p. 27).  Petitioner argues that "it is reasonable to assume[] that the jury would have reached a different result" had Idiart presented Preciado's testimony and the photographs of the truck to the jury. (Doc. 1. P. 27).

Petitioner avers that the prosecutor argued in his closing arguments that Petitioner fabricated the story about the stolen truck while he was in the Fresno County Juvenile Hall. (Doc. 1, p. 28). According to Petitioner, Preciado's testimony would have "undermined the prosecutor's (sic) theory of the case" and established Petitioner's innocence. (Doc. 1, p. 28).  Plaintiff appears to argue he sustained prejudice on the appeal of his conviction to the California Court of Appeals because Preciado's testimony and pictures of the truck were not contained in the record to undermine the prosecutor's "theory of the case." (Doc. 1, p. 28).

In his Traverse, Plaintiff argues Preciado's testimony was relevant to his defense that he "couldn't have committed the murder, [because] I was out in a stolen truck that night." (Doc. 20, p. 9). Additionally, Petitioner contends that evidence of the truck-bed cover would have placed him in a different part of town the night of the murder. (Doc. 20, p. 9).  Plaintiff avers that Idiart spoke with Preciado, but failed to present Preciado as a witness. (Doc. 20, p. 9).

Respondent counters by arguing that, even if the jury had heard testimony about the purported sale of the stolen truck bed cover on the day *after* the murder, that evidence would not have exculpated Petitioner from guilt for the murder the previous day. To the contrary, Preciado's testimony would have simply shown that a sale occurred, and thus the testimony was irrelevant.

In the Court's view, none of Petitioner's allegations, either individually or collectively, contain sufficient factual detail to support a conclusion that Idiart's performance was deficient or, if deficient, prejudicial.  Petitioner alleges that Idiart failed to conduct a pretrial investigation concerning Preciado's testimony, but later admits that Idiart spoke with Preciado prior to trial. (Doc. 1, p. 26; Doc. 20, p. 9). The notion that Idiart was somehow required to conduct a pretrial investigation beyond speaking with Preciado is meaningless without establishing that there was something worth investigating or reviewing beyond the interviewing of the purported witness.

Also, Petitioner contends that Preciado's testimony would have supported his contention that, on the night of the murder, he was in another part of town stealing a truck.  However, nothing links the truck cover sold by Petitioner to Preciado with any stolen truck, much less a specific truck stolen by Petitioner the previous night, or a truck stolen by Petitioner at a time and location that would have excluded him as a suspect in the murder and attempted murders.  Because Preciado's testimony had no

9

relevance to Petitioner's guilt, it was inadmissible.  Obviously, Petitioner's counsel was not deficient for refusing to offer irrelevant, inadmissible evidence.

However, even if the evidence had some probative value, Petitioner has not shown prejudice. Petitioner contends that "it is reasonable to assume[] that the jury would have reached a different result," (Doc. 1, p. 27), and a "more favorable determination would have been reasonable [or] probable," (Doc. 20, p. 9) had Idiart presented Preciado's testimony.  It is Petitioner's burden to show, however, by specific and discernible evidence, that his trial counsel—in this case, not in some abstract or hypothetical case—actually provided representation that fell below <u>Strickland</u>'s reasonableness standard and thereby prejudiced Petitioner in the process, and that the state court's adjudication of that issue was objectively unreasonable.  Mere guesses that the jury *may* have decided a verdict differently fall well below the standard required by <u>Strickland</u>.

Moreover, in rendering its decision, the Superior Court considered that Idiart's failure to present such testimony did not cause any prejudice to the Petitioner.  Rather, the Superior Court considered that Preciado's testimony, at best, would have established that Petitioner sold a truck bed cover that day after the murder.  More telling is the Superior Court's observation that, even had Preciado's testimony about the subsequent sale somehow shown Petitioner stole a truck the previous evening, that fact alone would not have established an alibi in the absence of specific and credible evidence regarding the time and location of the theft of the truck in relation to the murder and attempted murders.  In the absence of such specific facts to demonstrate the state court's adjudication of this issue was objectionably unreasonable, the Court defers to the trial court's ultimate decision. <u>Pirtle</u>, 313 F.3d at 1167.

Accordingly, the Court finds that Petitioner has failed to satisfy either prong of <u>Strickland</u>. Given that conclusion, the state court's adjudication of this issue was not objectively unreasonable.

B.     Admission Of Gang Expert Testimony.

Petitioner next contends that his federal right to confront witnesses and his right to a fair trial were curtailed by the admission of gang expert witness testimony.  This contention is without merit.

1.   The Superior Court's Analysis.

The Superior Court rejected Petitioner's contention as follows:

10

[T]o the extent that petitioner complains that a police detective relied on hearsay statements to give her opinion that petitioner was a member of a gang, experts are allowed to rely on hearsay evidence to form their opinions.

"Expert testimony may also be premised on material that is not admitted into evidence so long as it is material of a type that is reasonably relied upon by experts in the particular field in forming their opinions. [Citations.] Of course, any material that forms the basis of an expert's opinion testimony must be reliable. (1 Witkin, Cal. Evidence (3d ed. 1986) The Opinion Rule, § 477, p. 448.) For 'the law does not accord to the expert's opinion the same degree of credence or integrity as it does the data underlying the opinion. Like a house built on sand, the expert's opinion is no better than the facts on which it is based.' [Citation.] So long as this threshold requirement of reliability is satisfied, even matter that is ordinarily *inadmissible* can form the proper basis for an expert's opinion testimony. [Citations.] [¶] And because Evidence Code section 802 allows an expert witness to 'state on direct examination the reasons for his opinion and the matter…upon which it is based,' an expert witness whose opinion is based on such inadmissible matter can, when testifying, describe the material that forms the basis of the opinion. [Citations.]" (People v. Gardeley, 14 Cal.4th 605, 618-619.) Thus, a detective who is an expert on gangs can rely upon hearsay evidence to support his or her opinion that a defendant is a member of a gang and was acting for the benefit of a gang. (Id. at 619.)

It appears from the record presented that Detective Ochoa was acting as an expert on gangs at the time she offered her testimony, and therefore it was not improper to allow her to testify as to the basis for her opinions, even though that testimony may have relied on hearsay statements. Consequently, petitioner has failed to show that it was improper to admit her testimony, or that his trial or appellate counsel should have challenged the admission of her testimony.

(LD 18, pp. 3-4).

   2. Analysis.

    a. Admission of Hearsay Evidence.

  To the extent Petitioner maintains that the admission of the expert's testimony included inadmissible hearsay, that is an issue of state law that is not cognizable in federal habeas proceedings. Holley v. Yarborough, 568 F.3d 1091, 1091 (9th Cir. 2009). A federal habeas corpus court has no authority to review a state's application of its own laws, but rather must determine whether a prisoner's constitutional or other federal rights have been violated. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990). Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus proceeding. Estelle, 502 U.S. at 67; Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.), cert. denied, 478 U.S. 1021 (1985). Failure to comply with state rules of evidence is neither *a necessary* nor a *sufficient* basis for granting federal habeas relief on due process grounds. Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir.1991). While adherence to state evidentiary rules suggests

that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial

even when state standards are violated; conversely, state procedural and evidentiary rules may

countenance processes that do not comport with fundamental fairness. Id. The due process inquiry in

federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it

rendered the trial fundamentally unfair. Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir.1995). But only

if there are no permissible inferences that the jury may draw from the evidence can its admission

violate due process. Jammal, 926 F.2d at 920.

> In Holley, the Ninth Circuit explained as follows:

> Each of Holley's remaining claims deal with admission of evidence, an issue of state law. Simple errors of state law do not warrant federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). "The issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point." Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir.1991). "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir.1995) (citing Estelle, 502 U.S. at 67-68, 112 S.Ct. 475).

> Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by "clearly established Federal law," as laid out by the Supreme Court. 28 U.S.C. § 2254(d). In cases where the Supreme Court has not adequately addressed a claim, this court cannot use its own precedent to find a state court ruling unreasonable. [Carey v.] Musladin, 549 U.S. [70] [ ] 77, 127 S.Ct. 649 [2009].

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, see Williams, 529 U.S. at 375, 120 S.Ct. 1495, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application." Musladin, 549 U.S. at 77, 127 S.Ct. 649. Under the strict standards of AEDPA, we are therefore without power to issue the writ on the basis of Holley's [evidentiary] claims.

Holley, 568 F.3d at 1101.

> Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the

admission was fundamentally unfair and resulted in a denial of due process.  Estelle, 502 U.S. at 72;

Pulley v. Harris, 465 U.S. 37, 41 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries

v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993), cert. denied, 510 U.S. 1191 (1994); Gordon v. Duran,

895 F.2d 610, 613 (9th Cir.1990).  However, the failure to comply with state rules of evidence alone is

neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.

1    Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir. 1991).  Only if there are no permissible

2    inferences that the jury may draw from the evidence can its admission rise to the level of a due process

3    violation.  Id. at 920.  Intent is a permissible inference that the jury may draw from the evidence of

4    prior bad acts.  See, Houston v. Roe, 177 F.3d 901, 910 n. 6 (9th Cir. 1999).

5            Here, Petitioner insists in his Traverse that the basis of his hearsay objection is not that it could

6    not form the basis of Detective Ochoa's expert opinion that the Floridora Bulldogs were a criminal

7    street gang, as defined by California law, but that, in the course of providing her expert opinion, Ochoa

8    implicated Petitioner in a prior shooting in 1999 that had the effect of prejudicing the jury based

9    entirely on uncorroborated hearsay.  (Doc. 20, p. 10).  Here, however, the challenged hearsay evidence

10   was not being offered to show a pattern of conduct by Petitioner or a prior "bad act" by Petitioner that

11   goes to motive or opportunity, see Cal. Evid. Code § 1101, but rather for the permissible inference of

12   proving the two predicate felonies required to show a "pattern of criminal activity" on the part of the

13   street gang. Jammal, 926 F.2d at 920.  Thus, Petitioner has failed to show that no permissible inferences

14   existed that the jury might draw from the challenged evidence, and, accordingly, it does not rise to the

15   level of a federal claim.  It is, therefore, simply an issue of state law.

16           Second, as discussed in Holley, the state courts' rejection of Petitioner's claim *could not* have

17   been  "contrary to, or an unreasonable application of, clearly established" United States Supreme Court

18   authority, since no such "clearly established" Supreme Court authority exists.  28 U.S.C. § 2254(d)(1).

19           Third, even if this Court could address the issue as a state law issue, the challenged testimony,

20   even if based on hearsay, was not improper under California law.  California Evidence Code section

21   801, subdivision (b) limits expert opinion testimony to an opinion "[b]ased on matter ... perceived by or

22   personally known to the witness or made known to [the witness] at or before the hearing, whether or

23   not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion

24   upon the subject to which [the expert] testimony relates...." "[A]n material that forms the basis of an

25   expert's opinion testimony must be reliable." People v. Gardeley (1996) 14 Cal.4th 605, 618.

26           As long as this threshold requirement of reliability is satisfied, even matter ordinarily

27   inadmissible, such as hearsay, can form the proper basis for an expert's opinion testimony. (Id.) Thus, a

28   gang expert may rely upon conversations with gang members, on his or her personal investigations of

gang-related crimes, and on information obtained from colleagues and other law enforcement agencies. See Gonzalez, 38 Cal.4th at p. 949, 44 Cal.Rptr.3d 237, 135 P.3d 649 ["A gang expert's overall opinion is typically based on information drawn from many sources and on years of experience, which in sum may be reliable."]; People v. Duran (2002) 97 Cal.App.4th 1448, 1463; People v. Gamez (1991) 235 Cal.App.3d 957, 968, *overruled on other grounds* in Gardeley, at p. 624, fn. 10.

In Gardeley, the California Supreme Court addressed this precise question and concluded that a an expert witness on gang activity could offer hearsay evidence as part of the basis for his or her opinion that the group in question was a criminal street gang under Cal. Pen. Code § 186.22.  Gardeley, 14 Cal. 4th at 722-723.  Moreover, the expert could offer his or her opinion that the criminal street gang had engaged in the required two predicate felonies that proved a "pattern of criminal gang activity," as required by § 186.22(f), because the hearsay testimony was not being offered to prove the truth of the matter asserted but to support the expert's opinion that the gang qualified as a criminal street gang under § 186.22.  Id. Thus, to the extent Petitioner's claim can be construed as an argument that in California, a gang expert may not rely on the hearsay statements of gang members, he is simply wrong. Gardeley, 14 Cal.4th at p. 618; Duran, 97 Cal.App.4th at 1463, 119 Cal.Rptr.2d 272.

Since the challenged evidence does not rise to the level of a federal due process violation, since there is no clearly established federal law on this issue for the state to apply, and because, even under state law, the evidence was admissible for a valid purpose, Petitioner's claim vis-à-vis hearsay must fail.

b. Confrontation Clause.

To the extent Petitioner contends that the challenged testimony violated his right to confront witnesses, he is also mistaken.  The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with the witnesses against him."  U.S. Const. amend. VI.  The federal confrontation right applies to the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. Crawford v. Washington, 541 U.S. 36, 61, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). It commands not that evidence be reliable, but that reliability be

assessed in a particular manner: by testing in the crucible of cross-examination. Id.; see Davis v. Alaska, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The Confrontation Clause applies to all "testimonial" statements. Crawford, 541 U.S. at 50–51. "Testimony ... is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." Id. at 51.

For purposes of federal habeas corpus review, the standard applicable to violations of the Confrontation Clause is whether the inadmissible evidence had an actual and prejudicial effect upon the jury. Hernandez v. Small, 282 F.3d 1132, 1144 (9th Cir.2002) (citing Brecht, 507 U.S. at 637).

When the primary purpose of taking an out-of-court statement is to create an out-of-court substitute for trial testimony, the statement is testimonial hearsay and Crawford applies. Michigan v. Bryant, — U.S. —, 131 S.Ct. 1143, 1155, 179 L.Ed.2d 93 (2011). See, e.g., Bullcoming v. New Mexico, — U.S. —, 131 S.Ct. 2705, 2712–14, 180 L.Ed.2d 610 (2011) (concluding a forensic lab report, prepared in connection with a criminal investigation, certifying that petitioner's blood alcohol level was above limit for aggravated DUI was testimonial); Melendez–Diaz v. Massachusetts, 557 U.S. 305, 310, 329, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009); United States v. Bustamante, 687 F.3d 1190, 1194 (9th Cir.2012) (document which in essence is an affidavit testifying to the contents of the birth records of a city is functionally identical to live, in-court testimony that an employee of city might have provided and therefore is a testimonial statement). When that is not the primary purpose, "the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." Bryant, 131 S.Ct. at 1155. The formality of the interrogation, or the lack of it, may inform the court's inquiry as to its "primary purpose." Id. at 1160.

The rule is long established in California that experts may testify as to their opinions on relevant matters and, if questioned, may relate the information and sources on which they relied in forming those opinions. Such sources may include hearsay." People v. Thomas, 130 Cal.App.4th 1202, 1209 (2005), citing Gardeley, 14 Cal.4th at 618–619; Cal. Evid.Code, § 801, subd. (b).) Since a gang expert "is subject to cross-examination about his or her opinions" and "the materials on which the expert bases his or her opinion are not elicited for the truth of their contents" but rather "are examined to assess the weight of the expert's opinion," no denial of Petitioner's rights to confrontation and cross-examination occurred. Thomas, 130 Cal.App.4th at 1210. As Thomas observes, Crawford states that the

15

confrontation clause "'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" Thomas, 130 Cal.App.4th at p. 1210, quoting Crawford, supra, 541 U.S. at p. 59.  To the extent Petitioner argues the prosecutor introduced the hearsay information and sources on which the gang expert relied to prove the truth of the gang expert's opinions, he is mistaken. Cf. Davis v. Washington, 547 U.S. 813, 821–832, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); Crawford, supra, 541 U.S. at pp. 51–52; Tennessee v. Street, 471 U.S. 409, 105 S.Ct. 2078 (1985).  "But any expert's opinion is only as good as the truthfulness of the information on which it is based. Thus in Thomas, the expert's opinion that the defendant is a member of a gang has value only if the jury believes the hearsay on which the expert relied. Hearsay in support of expert opinion is simply not the sort of testimonial hearsay the use of which Crawford condemned." Ramirez, supra, 153 Cal.App.4th at p. 1427, citing Thomas, I, 130 Cal.App.4th at p. 1210.

Clearly established Supreme Court precedent in Crawford "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  Crawford, 541 U.S. at 59 n. 9 (citing Tennessee v. Street, 471 U.S. 409, 414, 105 S.Ct. 2078 (1985)); see Moses v. Payne, 555 F.3d 742, 755 (9th Cir.2009) (finding that admission of out of court statement made by criminal defendant's son to a social worker did not violate Confrontation Clause as statement was admitted to explain why social worker called Child Protective Services).  Similar to the California rule discussed previously, the Federal Rules of Evidence permit an expert to rely on inadmissible hearsay evidence as long as the evidence is of the kind experts in the field regularly consult. Fed.R.Evid. 703; see United States v. Hankey, 203 F.3d 1160, 1169 (9th Cir.2000) (holding that police officer possessing years of experience and special knowledge of gangs may qualify as expert witnesses); see also United States v. Steed, 548 F.3d 961, 976 n. 13 (11th Cir.2008) (noting that there exists no Supreme Court precedent pertaining to expert witness' reliance on otherwise inadmissible sources); but cf. United States v. Mejia, 545 F.3d 179, 197 (2nd Cir.2008) (noting that police expert's testimony explaining inadmissible evidence he relied upon in reaching his conclusion may implicated the Confrontation Clause as the expert simply transmitted hearsay to the jury).

Based on the foregoing, the Court does not find that an objective application of Crawford would result in a finding that the gang expert's reliance on hearsay testimony to explain her opinion

was a violation of Petitioner's Confrontation Clause rights. See Walker v. Clark, 2010 WL 1643580, at

*15 n. 8 (C.D.Cal. Feb.18, 2010) (listing district court cases finding that hearsay statements of gang

members regarding their gang membership did not violate the Confrontation Clause as they were

attested to by gang expert who was testifying about his expert opinion).

C.      Outside Influences On Jury.

Petitioner next contends that his fifth, sixth, and fourteenth amendment rights to a fair trial

were violated because of outside influences on the jury.  The Court disagrees.

1. The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

> During the hiatus between the verdicts and the sentencing hearing, the trial court received an
> anonymous letter from a "concerned citizen" purporting to narrate charges of jury bias by
> someone whom she further identified as a friend who was a juror at Cernas's and Ybarra's trial.
> At the trial court's invitation, the juror appeared for in camera questioning by the trial court
> with counsel present. She said that after initial balloting showed nine votes for conviction and
> three votes (including hers) for acquittal a majority juror said the minority jurors were playing
> "the devil's advocate," which to her "was like the devil's helper," and that no one changed
> anyone's mind. She characterized the deliberations as "intense" and the majority jurors and
> herself alike as "mad." She described the tone of the majority jurors as "'Hurry up and just say
> yes'" and the response of the minority jurors as acquiescence "little by little" in the will of the
> majority jurors. She said she "wanted to get out of it" but said nothing after a juror who had
> been a juror before told her "it would not be easy to get out of it" and the judge "would send
> [her] back and start deliberating more." At the end of the in camera questioning, Cernas and
> Ybarra made a motion for a new trial on the ground of juror misconduct. Finding no prejudice,
> the trial court denied the motion.
>
> "Jurors may be expected to disagree during deliberations, even at times in heated fashion."
> (People v. Orchard (1971) 17 Cal.App.3d 568, 574, 95 Cal.Rptr. 66 (Orchard).) Quoting
> Orchard with approval, the Supreme Court called "particularly harsh and inappropriate" a
> majority juror's alleged death threat to a lone holdout juror but emphasized "no reasonable
> juror could have taken it literally. Manifestly, the alleged 'death threat' was but an expression
> of frustration, temper, and strong conviction against the contrary views of another panelist."
> (People v. Keenan (1988) 46 Cal.3d 478, 541, 250 Cal.Rptr. 550, 758 P.2d 1081 (Keenan).)
> Here, the record shows that at the polling of the jury the juror at issue answered, "Yes," to the
> question whether those were her verdicts as read. Likewise, at the polling of the jury in Keenan
> the lone holdout juror signified that the verdict "was her individual verdict." (Id. at p. 542, 250
> Cal.Rptr. 550, 758 P.2d 1081.)
>
> Ybarra argues, primarily in reliance on In re Stankewitz (1985) 40 Cal.3d 391, 220 Cal.Rptr.
> 382, 708 P.2d 1260 (Stankewitz), that the juror who had been a juror before "was not an expert
> of judicial practices" and that he "committed misconduct by asserting such expertise." The
> juror in Stankewitz "advised the other jurors that he had been a police officer for over 20 years;
> that as a police officer he knew the law; that the law provides a robbery takes place as soon as
> a person forcibly takes personal property from another person, whether or not he intends to
> keep it; and that as soon as petitioner took the wallets at gunpoint in this case he committed
> robbery, whether or not he intended to keep them." (Id. at p. 396, 220 Cal.Rptr. 382, 708 P.2d
> 1260.) That juror "'consulted' his own outside experience as a police officer on a question of
> law," gave "legal advice" that was "totally wrong," and, "vouching for its correctness on the

17

strength of his long service as a police officer," did not "keep his erroneous advice to himself" but "stated it again and again to his fellow jurors." (Id. at pp. 399–400, 220 Cal.Rptr. 382, 708 P.2d 1260.) The Supreme Court found prejudice. (Ibid.)

Stankewitz is inapposite. The record here shows that the juror who had been a juror before professed no expertise in judicial practices but simply expressed an opinion on the basis of a life experience he had had. "The jury system is an institution that is legally fundamental but also fundamentally human. Jurors bring to their deliberations knowledge and beliefs about general matters of law and fact that find their source in everyday life and experience. That they do so is one of the strengths of the jury system. It is also one of its weaknesses: it has the potential to undermine determinations that should be made exclusively on the evidence introduced by the parties and the instructions given by the trial court. Such a weakness, however, must be tolerated." (People v. Marshall (1990) 50 Cal.3d 907, 950, 269 Cal.Rptr. 269, 790 P.2d 676.)

The governing standard on appeal is independent review, as a mixed question of law and fact, of the trial court's finding. (People v. Nesler (1997) 16 Cal.4th 561, 582, fn. 5, 66 Cal.Rptr.2d 454, 941 P.2d 87 (plur. opn. of George, C.J.).) On the basis of admissible evidence in the juror's responses to the trial court's questioning (see Evid.Code, § 1150, subd. (a)), and applying the governing standard of review, we conclude that the trial court's finding of no prejudice is correct on the law and the facts alike.

(LD 4, pp. 18-20).

### 2. Federal Standard.

The Sixth Amendment right to trial by jury "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722 (1961). If the jury is exposed to extrinsic facts not introduced as evidence, a defendant is deprived of his right to confrontation, cross-examination, and assistance of counsel under the Sixth Amendment. Dickson v. Sullivan, 849 F.2d 403, 406 (9th Cir.1988). While the Supreme Court has never rejected the idea of implied juror bias, implied bias by a juror has rarely been applied. See United States v. Plache; 913 F.2d 1375, 1377 (9th Cir. 1990); Tinsley v. Borg, 895 F.2d 520, 527 (9th Cir. 1990). "Only in extreme or extraordinary cases should bias be presumed." Plache; 913 F.2d at 1377, quoting, Tinsley, 895 F.2d at 527.

"[A] petitioner is entitled to habeas relief only if it can be established that the constitutional error had 'substantial and injurious effect or influence in determining the jury's verdict.'" Lawson v. Borg, 60 F.3d 608, 612 (9th Cir.1995), quoting, Brecht v. Abrahamson, 507 U.S. 619, 637 & n. 9,113 S.Ct. 1710, 1722 & n. 9 (1993). The Ninth Circuit has found that whether a constitutional error is harmless is not a factual determination entitled to the presumption of correctness under 28 U.S.C. § 2254(d). Lawson, 60 F.3d at 612; Dickson, 849 F.2d at 405; Marino v. Vasquez, 812 F.2d 499, 504 (9th Cir.1987). Thus, this Court does not simply defer to the California court's finding that there was

no prejudice.

However, there is no requirement that a defendant be given a new trial each time a juror has been placed in a situation that could potentially be compromising.  Smith v. Phillips, 455 U.S. 209, 217, 102 S.Ct. 940, 946 (1982).  "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."  Id.

A reviewing court must be mindful of the fact that "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." Rushen v. Spain, 464 U.S. 114, 118 (1983), *quoting* Smith v. Phillips, 455 U.S. 209, 217 (1982).  When the alleged misconduct is intra-jury, it has been widely held that the trial court is entitled to greater deference in its review, because the misconduct is less serious than extra-jury influences.  See Tanner v. United States, 483 U.S. 107, 117- 21 (1987); Smith v. Phillips, 455 U.S. 209 (1982); Remmer v. United States, 347 U.S. 227, 228-30 (1954); Mattox v. United States, 146 U.S. 140, 149 (1892); United States v. Bertoli, 40 F.3d 1384, 1393 (3d Cir.1994) ("[I]ntra-jury communications pose a less serious threat to a defendant's right to an impartial trial than do extra-jury influences, and therefore district courts are entitled to even greater deference in their responses to them than in responses to outside influences."). United States v. Ford, 840 F.2d 460, 465-66 (7th Cir.1988); Government of Virgin Islands v. Gereau, 523 F.2d 140 (3d Cir.1975); Fed.R.Evid. 606(b) (juror may only testify post-verdict on the question whether extraneous influence was brought to bear on jurors).  Petitioner has the burden of showing that internal juror misconduct prejudiced him. See United States v. Dutkel, 192 F.3d 893, 895 (9th Cir.1999).

Regarding a juror's consideration of extrinsic evidence was so substantial and injurious as to violate the Constitution, the Court must consider:  "(1) whether the extrinsic material was actually received, and if so, how; (2) the length of time it was available to the jury; (3) the extent to which the jury discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so, at what point in the deliberations it was introduced; and (5) any other matters which may bear on the issue of ... whether the introduction of extrinsic material [substantially and injuriously] affected the verdict."  Lawson, 60 F.3d at 612; see also  Blodgett, 5 F.3d at 1190; Bayramoglu v. Estelle, 806 F.2d 880, 887 (9th Cir.1986).  "None of these factors should be considered dispositive."

Jeffries, 5 F.3d at 1190.  The Court is also to place great weight on the nature of the extrinsic evidence introduced.  See Jeffries, 5 F.3d at 1190-91; Dickson, 849 F.2d at 406-07; Marino, 812 F.2d at 506.

As well, the Court looks to whether the extrinsic evidence was "rendered insignificant by overwhelming evidence of guilt."  Lawson, 60 F.3d at 613.  Other factors to be considered include "whether the [extrinsic evidence] was ambiguously phrased; whether the extraneous information was otherwise admissible or merely cumulative of other evidence adduced at trial; whether a curative instruction was given or some other step taken to ameliorate the prejudice; [and] the trial context."  Jeffries v. Wood, 114 F.3d 1484, 1491 (9th Cir.1997) (en banc).

Even in a habeas context, "reversible error commonly occurs where there is a "direct and rational connection between the extrinsic material and a prejudicial jury conclusion, and where the misconduct relates directly to a material aspect of the case."  Lawson, 60 F.3d at 612-13 (quoting Marino v. Vasquez, 812 F.2d 499, 506 (9th Cir.1987)).  "The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence."  O'Neal v. McAninch, 513 U.S. 432, 438, 115 S.Ct. 992 (1995).

   3.  Analysis.

The 5th DCA's analysis considered a number of salient points regarding this issue.  First, all of the jurors were polled and all answered affirmatively, and individually, that Petitioner was guilty. None of the jurors disputed the verdicts when the opportunity was presented to do so.  Second, disagreement, even "heated" disagreement, is simply part of the jury deliberation process and does not provide a basis to set aside the jury's verdict.  If heated debate alone were sufficient grounds for mistrial in all criminal cases, the criminal justice system could not function.  Third, Petitioner has failed to point out any specific extrinsic evidence that was introduced by any jurors apart from the one juror, who had previously been a juror, who remarked that getting out of jury service would be difficult. Nothing in the case law precludes a sitting juror from expressing an opinion based on his or her own experience.  Indeed, jurors are usually instructed that they should use their own life experiences when performing their deliberative duties.  Here, however, the juror's expressed opinion did not even relate to the charges or evidence in the case, but instead focused on the tangential question of the likelihood

that the trial court would excuse a deliberating juror simply because the juror wanted to "get out of it." Given the foregoing, Petitioner has shown no inappropriate actions or comments by any juror.  Indeed, the thrust of Petitioner's argument, i.e., the jurors debated heatedly about his guilt, merely shows the jury process worked in this case, although without reaching the outcome Petitioner would have desired.

### D.   Restricted Cross-Examination.

Petitioner next contends that his fifth and fourteenth amendment rights to a fair trial were violated because of restrictions placed on his counsel's cross-examination.  This contention too is without merit.

### 1.   The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

Cernas and Ybarra argue that the exclusion of evidence of Lopez's misdemeanor welfare fraud violated the confrontation and due process clauses. The Attorney General argues the contrary.

After Lopez took the stand, Cernas requested that the trial court admit evidence to impeach her testimony with acts of welfare fraud that led to her entering a misdemeanor plea, attending a class, and making restitution and, ultimately, to the trial court's dismissing the charge against her.  Noting that she suffered no conviction, that she had no perception of "any benefit for testifying," and that the trial court preferred to "generally deny admissibility of Wheeler evidence because it tries a case within a case," the trial court denied the request. By so ruling, Cernas and Ybarra argue, the trial court "effectively substituted its judgment for that of the California Supreme Court, which held in [Wheeler, which discusses Evidence Code section 787 at length,] that misdemeanor acts of moral turpitude are admissible for impeachment, subject to a trial court's exercise of discretion under Evidence Code section 352." Cernas and Ybarra argue that the trial court "appears to have preferred Evidence Code section 787, which [Wheeler] held no longer precludes the use of relevant misdemeanor conduct for impeachment in criminal proceedings."

In ruling on an Evidence Code 352 objection, the trial court need neither expressly weigh prejudicial effect against probative value nor expressly announce compliance with the statute. (People v. Mendoza (2000) 24 Cal.4th 130, 178, 99 Cal.Rptr.2d 485, 6 P.3d 150.) The trial court's ruling, which followed hard on the heels of a colloquy among court and counsel about Evidence Code section 352, shows the requisite understanding of and compliance with the statute (see People v. Riel (2000) 22 Cal.4th 1153, 1187–1188, 96 Cal.Rptr.2d 1, 998 P.2d 969):

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid.Code, § 352; italics added.)

The trial court retains wide latitude to restrict cross-examination of an adverse witness on Evidence Code section 352 grounds without running afoul of the confrontation clause. (People v. Harris (1989) 47 Cal.3d 1047, 1090–1091, 255 Cal.Rptr. 352, 767 P.2d 619, disapproved on another ground in People v. Wheeler, supra, 4 Cal.4th at p. 299, fn. 10, 14 Cal.Rptr.2d 418, 841 P.2d 938; see generally Delaware v. Van Arsdall (1986) 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674.) That is consistent with the trial court's statutory duty to "exercise

reasonable control over the mode of interrogation of a witness so as to make interrogation as rapid, as distinct, and as effective for the ascertainment of the truth" as possible. (Evid.Code, § 765, subd. (a).) The law entrusts the trial court with the general responsibility to exercise reasonable control over the proceedings:

> "It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved." (§ 1044.)

On appeal, an Evidence Code section 352 ruling is subject to the deferential abuse of discretion standard of review. (People v. Kipp (2001) 26 Cal.4th 1100, 1121, 113 Cal.Rptr.2d 27, 33 P.3d 450.) Only if the record shows an exercise of discretion in an arbitrary, capricious, or patently absurd manner that caused a manifest miscarriage of justice will an Evidence Code section 352 ruling be overturned. (People v. Rodriguez (1999) 20 Cal.4th 1, 9–10, 82 Cal.Rptr.2d 413, 971 P.2d 618.)

Here, Medrano and María identified Cernas and Ybarra at trial as perpetrators. Lopez identified Cernas, but not Ybarra. On the key issue of identity, on which Cernas and Ybarra focus, Lopez's testimony with reference to Cernas was cumulative to Medrano's and María's and with reference to Ybarra was tangential in comparison with both Medrano's and María's. That record precludes Cernas and Ybarra from making the requisite showing not only for us to overturn the trial court's ruling on the basis of Evidence Code section 352 but also for us to discern the fundamental lack of fairness necessarily implicit in any violation of the due process clause. (See People v. Sanders (1995) 11 Cal.4th 475, 510, fn. 3, 46 Cal.Rptr.2d 751, 905 P.2d 420; Jammal v. Van de Kamp (9th Cir.1991) 926 F.2d 918, 919–920.) Since trial courts traditionally retain the intrinsic power in the interests of orderly procedure and avoidance of prejudice to control the admission of evidence through the exercise of discretion, as a general matter the rules of evidence do not impermissibly infringe on an accused's constitutional rights. (People v. Cudjo (1993) 6 Cal.4th 585, 611, 25 Cal.Rptr.2d 390, 863 P.2d 635.) That is so here.

(LD 4, pp. 8-9).

       2. <u>Analysis</u>.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986) (quoting <u>California v. Trombetta</u>, 467 U.S. 479, 485, 104 S.Ct. 2528 (1984)) (citations omitted); <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294, 93 S.Ct. 1038 (1973).

The right to present relevant evidence, however, is subject to reasonable restrictions, such as state evidentiary rules. <u>Moses v. Payne</u>, 555 F.3d 742, 757 (9th Cir. 2009); <u>see also LaJoie v. Thompson</u>, 217 F.3d 663, 668 (9th Cir.2000) (observing that right to present evidence in criminal case "'may, in appropriate circumstances, bow to accommodate other legitimate interests in the criminal trial process'") (quoting <u>Michigan v. Lucas</u>, 500 U.S. 145, 149, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991)).

Indeed, "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" Green v. Lambert, 288 F.3d 1081, 1090 (9th Cir.2002) (quoting United States v. Scheffer, 523 U.S. 303, 308, 118 S.Ct. 1261 (1998)). The Supreme Court, moreover, has "indicated its approval of 'well-established rules of evidence [that] permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.'" Moses, 555 F.3d at 757 (quoting Holmes v. South Carolina, 547 U.S. 319, 326, 126 S.Ct. 1727 (2006)).

In evaluating a claim of inability to present a complete defense based on the exclusion of evidence, reviewing courts must be mindful that state evidentiary rulings are not cognizable in a federal habeas proceeding unless constitutional rights are affected. See Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475 (1991); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990). Consequently, a state court's exclusion of certain evidence will not justify habeas relief unless the exclusion is so prejudicial as to jeopardize the defendant's due process rights. Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir.1990). In other words, in order to prevail, the petitioner must show that the court's ruling was so prejudicial that it rendered his trial fundamentally unfair. See Estelle, 502 U.S. at 68; Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir.1991).

The Supreme Court of the United States has not squarely addressed the issue of whether an evidentiary rule "requiring a trial court to balance factors and exercise its discretion" violates a defendant's due process right to present a defense. Moses, 555 F.3d at 758.  Rather, as the Ninth Circuit has observed, "[t]he Supreme Court has found a violation of the right to present a complete defense [only] in cases where a state evidentiary rule, on its face, 'significantly undermined fundamental elements of the defendant's defense,' but did little or nothing to promote a legitimate state interest." United States v. Pineda–Doval, 614 F.3d 1019, 1033 n. 7 (9th Cir.2010).  Specifically, the Supreme Court has struck down rules that "preclude[ ] a defendant from testifying, exclude[ ] testimony from key percipient witnesses, or exclude[ ] the introduction of all evidence relating to a crucial defense." Moses, 555 F.3d at 758.

23

1        Here, the evidentiary rule under which the witness's prior bad acts were excluded does not fall

2   into any of the categories of evidentiary rules struck down by the Supreme Court. As the state court

3   explained, the prior bad acts were excluded pursuant to California Evidence Code section 352. Pursuant

4   to California law, a decision to exclude evidence under California Evidence Code section 352

5   necessarily involves the exercise of discretion. Indeed, it requires the trial court to balance the

6   evidence's probative value versus its potential to cause prejudice, confusion, and undue consumption of

7   time. Because no United States Supreme Court case has squarely held that the exclusion of evidence

8   under these circumstances violates a criminal defendant's right to present a defense, the state court's

9   holding could not have been an unreasonable application of clearly established federal law as

10  determined by the Supreme Court. See Carey v. Musladin, 549 U.S. 70, 77, 127 S.Ct. 649 (2006)

11  (where Supreme Court precedent gives no clear answer to question presented, "it cannot be said that the

12  state court 'unreasonab[ly] appli[ed] clearly established Federal law' ").

13       Moreover, there is no evidence to suggest that the California Evidence Code section 352 was

14  applied in either a mechanistic or arbitrary manner by the trial court.  Indeed, to the contrary, the 5th

15  DCA notes that the trial court's ultimate exercise of discretion came after a colloquy between counsel

16  and the court and that the colloquy showed the trial court's understanding of the balancing required by

17  § 352.  (LD 4, pp. 8-9).  Petitioner's desire to present the proposed evidence was considered in light of

18  the other legitimate interests at play in his trial, but the trial court noted that Lopez's testimony

19  concerning Petitioner was cumulative and that she had never been convicted of welfare fraud. Under

20  such circumstances, the State of California has a legitimate interest in excluding from one of its trials

21  confusing, prejudicial, and unduly time consuming evidence. See Holmes, 547 U.S. at 326–27.

22       E.   Prosecutorial Misconduct And Ineffective Assistance.

23       Petitioner next contends that the prosecution failed to disclose exculpatory evidence and that

24  his trial counsel was ineffective for failing to raise such a claim.  Again, this contention lacks merit.

25       1.   The Superior Court's Analysis.

26  The Superior Court rejected Petitioner's claim as follows:

27  Petitioner argues that the court should overturn his 2005 conviction for first degree murder
    because the prosecution withheld critical evidence from the defense that might have resulted in
28  an acquittal if it had been disclosed.  In particular, petitioner claims that the prosecution had in
    its possession police call logs that would have shown that petitioner could not have been in the

car at the time of the shooting because another person was driving the car allegedly used in the shooting and had been pulled over for a traffic violation at about the same time as the murder. Petitioner claims that this evidence would have corroborated his testimony that he was not at the crime scene.

…

Even if the court were to consider the merits of the petition, the petitioner has failed to allege any facts showing that he is entitled to relief.  Petitioner claims that the prosecution withheld key evidence that would have shown that he could not have been in the car at the time of the murder.  He claims that someone else was driving the car when the shooting occurred, and that the driver was pulled over by the police for a traffic violation.  Petitioner further alleges that there must have been police call logs that would show that the driver was pulled over at the time of the shooting.

Yet petitioner offers no evidence that such call logs actually existed, or that the prosecution was aware of the logs and their significance to the case and deliberately withheld them.  It appears that petitioner's claim is based on pure speculation that the call logs existed and that the prosecution deliberately withheld them.  Conjecture and speculation are not sufficient to state a prima facie case for relief, however.  "Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing."  (People v. Karis, (1988) 46 Cal.3d 612, 656.)  Without some evidence that the prosecution actually possessed the call logs and deliberately withheld them from the petitioner's defense, petitioner has not stated any facts showing that he is entitled to relief.

Also, it appears that petitioner has been aware of the facts on which he bases his claim for many months, and in fact he may have had the information during the trial.  According to petitioner's private investigator, the investigator met with petitioner's co-defendant Ronald Ybarra on March 10, 2009, at which time Ybarra told him about the fact that his father was driving the car that was allegedly used in the shooting on the night of the murder and he was pulled over for a traffic violation at about the time of the murder.  (Gunn decl., p. 1.)  On March 11, 2009, Gunn spoke with Yabarra's [sic] father, Ronald Ybarra, Jr., who confirmed that he was driving the car on the night of the shooting and that he thought he had been pulled over around 9:30 p.m., although he could not be sure.  (Id. at p. 2.)

Thus, petitioner apparently has been aware of the fact that Ybarra's father was driving the car and was stopped on the night of the murder at least since March of 2009, and possibly even during or before the trial.  Petitioner has not explained when he first learned of the facts underlying his claim, and why he did not raise this issue in his original petition for writ of habeas corpus if he was aware of the facts in March of 2009.  Nor does he explain why Ybarra's father did not come forward with his story during the trial if he knew that he had been pulled over in the car on the night of the murder.  Consequently, petitioner has failed to state any facts showing that he is entitled to relief.

(LD 27, pp. 2-5).

   2.  <u>Federal Standard</u>.

Due process requires that the prosecution disclose exculpatory evidence within its possession.  <u>Brady v. Maryland</u>, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); <u>Cooper v. Brown</u>, 510 F.3d 870, 924 (9th Cir.2007). There are three components of a <u>Brady</u> violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence

must have been suppressed by the State, either willfully or inadvertently; and prejudice must have

ensued." Strickler v. Greene, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). See also

Banks v. Dretke, 540 U.S. 668, 691, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004); Silva v. Brown, 416

F.3d 980, 985 (9th Cir.2005). A failure to preserve evidence violates a defendant's right to due process

if the unavailable evidence possessed "exculpatory value that was apparent before the evidence was

destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence

by other reasonably available means." California v. Trombetta, 467 U.S. 479, 489, 104 S.Ct. 2528, 81

L.Ed.2d 413 (1984). A defendant must also demonstrate that the police acted in bad faith in failing to

preserve the potentially useful evidence. Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 102

L.Ed.2d 281 (1988); Phillips v. Woodford, 267 F.3d 966, 986–87 (9th Cir. 2001). The presence or

absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the

evidence at the time it was lost or destroyed. Youngblood, 488 U.S. at 56–57 n. *, 109 S.Ct. 333; see

also Grisby v. Blodgett, 130 F.3d 365, 371 (9th Cir.1997); United States v. Barton, 995 F.2d 931, 934

(9th Cir.1993); United States v. Cooper, 983 F.2d 928, 931 (9th Cir.1993). "The mere failure to

preserve evidence which could have been subjected to tests which might have exonerated the defendant

does not constitute a due process violation." Phillips, 267 F.3d at 987 (quoting United States v.

Hernandez, 109 F.3d 1450, 1455 (9th Cir.1997)). See also Youngblood, 488 U.S. at 57, 109 S.Ct. 333.

       3. Analysis.

     Here, Petitioner has not met any of Brady's three requirements. First, as a threshold matter, he

has failed to show the actual existence of the purportedly exculpatory evidence in the first instance. As

the 5th DCA noted, the claim is "based on pure speculation that the call logs existed." Nowhere has

Petitioner established that such logs existed or that they contained information regarding any traffic

violation by Ybarra's father at or near the time of the incident. Without such information, Petitioner's

contention that prosecutors withheld exculpatory evidence has no basis in fact or reality. If Petitioner

has failed to establish the very existence of the exculpatory evidence itself, it is obvious that he has also

failed to show either that the evidence was knowingly suppressed by the prosecution or that such

suppression was prejudicial. It necessarily follows that defense counsel's performance in failing to

raise a Brady objection to non-existent exculpatory evidence could not have been deficient.

In sum, Petitioner's claim is conclusory and based entirely on speculation rather than fact.  The state court adjudication expressly recognized this fatal deficiency and used it as a basis to reject the claim.  Doing so was neither contrary to nor an unreasonable application of either <u>Brady</u> or <u>Strickland</u>.  Accordingly, Petitioner's claim should be denied on its merits.

**RECOMMENDATION**

For the foregoing reasons, the Court HEREBY RECOMMENDS that the instant petition for writ of habeas corpus (Doc. 1), be DENIED with prejudice on its merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one (21) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   __**December 2, 2013**__          _____**/s/ Jennifer L. Thurston**
                                                        UNITED STATES MAGISTRATE JUDGE